

✓ Priority
✓ Send
___ Clsd
___ Enter
___ JS-5/JS-6
___ JS-2/JS-3

FILED-SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

APR 23 2007

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DNP INTERNATIONAL CO., INC., <br><br> Plaintiff(s), <br><br> v. <br><br> CHENTAO HANG, ZHIQI ZHU, XUEHONG WANG, and DOES 1 through 10, <br><br> Defendant(s). | CASE NO. SA CV 06-628 DOC (RNBx) <br><br> [~~TENTATIVE~~] O R D E R DENYING DEFENDANT CHENTAO HANG'S MOTION FOR RELIEF FROM DEFAULT AND DEFAULT JUDGMENT |

DOCKETED ON CM
APR 24 2007
BY _____ 024

Before the Court is Defendant Chentao Hang's Motion for Relief from Default ("Motion"). After reviewing the moving, opposing, and reply papers and oral argument from both parties, and for the reasons set forth below, the Court DENIES the Motion.

## I. BACKGROUND

Plaintiff DNP International Co., Inc. ("DNP") brought this action against Defendant on July 10, 2006 in the Central District of California. Its Complaint alleged that Defendant conspired with other persons to access, use, and steal DNP's proprietary and confidential information for their own personal gain. Decl. of Olivier A. Taillieu ¶ 3.

25

Prior to commencing the instant action in federal court, DNP brought various state law claims against Defendant in state court (the "Underlying Case"). On August 3, 2006, DNP served its Complaint in the instant federal action at the offices of Bin Li, who represented Defendant in the Underlying Case. Taillieu Decl. Ex. A ("Proof of Service"); *see also* Decl. of Bin Li ¶ 1; Decl. of Chentao Hang ¶ 5. DNP later performed substitute service at the Defendant's address in Irvine, California.

Under court rules, Defendant's response was due on or before September 14, 2006. *Id.* ¶ 12. Because Defendant never filed a response, DNP filed a Request for Entry of Default on December 6, 2006. *Id.* Ex. F ("Request for Entry of Default"). The Clerk thereafter entered default against Defendant on December 18, 2006.

On January 23, 2007, Defendant filed his first motion for relief from default, within which he argued that the default was invalid because the service DNP rendered on Li was not effective. Finding no cause for relief, the Court rejected that motion on February 21, 2007. On March 14, 2007, Defendant filed the instant Motion seeking relief from default. This Motion is substantially identical to Defendant's prior motion save that it additionally argues that the substitute service DNP rendered on Defendant's residence was also ineffective.

## II. LEGAL STANDARD

Under Rule 55(c) of the Federal Rules of Civil Procedure, a court may set aside an entry of default for "good cause shown." Fed. R. Civ. P. 55(c). In performing a good cause analysis, a district court considers three factors: (1) whether setting aside the default would prejudice the plaintiff; (2) whether the defendant has a meritorious defense; and (3) whether the defendant's culpable conduct led to the default. *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000). Because "this tripartite test is disjunctive," a district court is be free to deny the motion "if any of the three factors [is] true." *Id.* (quoting *In re Hammer*, 940 F.2d 524, 526 (9th Cir. 1991).

## III. DISCUSSION

### A. DNP Properly Served Defendant

Defendant now moves the Court to set aside the default entered against him pursuant to

these rules, contending that the service he received was defective. *See Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1991) (granting relief from default where service of process found deficient). It was not.

A lawyer can be a client's implied agent to receive service of process when he repeatedly represented that client in an underlying case and where the totality of the circumstances demonstrates the client's intent to convey such authority. *Rubin v. Pringle, (In re Focus Media Inc.)*, 387 F.3d 1077, 1079 (9th Cir. 2004). "The critical inquiry in evaluating an attorney's authority to receive process is, of course, whether the client acted in a manner expressly or impliedly indicated the grant of such authority." *Id.* at 1083 (citing *Olympus Corp. v. Dealer Sales & Serv., Inc.*, 107 F.R.D. 300, 305 (E.D.N.Y. 1985)). Where agency to accept service of process is implied, it must be implied "from all the circumstances accompanying the attorney's appointment which indicate the extent of authority the client intended to confer." *Rubin*, 387 F.3d at 1083 (citations omitted).

Defendant and Li, his attorney in the Underlying Case, both claim that Defendant never gave express authorization for Li to accept service on his behalf. Hang Decl. ¶ 5; Li Decl. ¶ 5. The circumstances of this litigation nonetheless reveal that such authority was implied. Li represented Defendant in a closely related adversarial proceeding in state court that involved not only the same parties but the same underlying facts. Taillieu Decl. ¶ 6. In that action, Li accepted service of DNP's complaint and regularly accepted service of other documents on Defendant's behalf. *Id.* ¶¶ 7, 9-10. Defendant did not on any of those prior occasions object to service through his attorney. *Id.* ¶ 10. In addition, Li was Defendant's only attorney in the Underlying Case, during which Li demonstrated he was privy to substantial confidential legal information and was trusted to act independently by representing Defendant during depositions, preparing Defendant's responses to discovery, and filing multiple papers on Defendant's behalf. *Id.* ¶ 8. Taken together, these facts are indicative of precisely the sort of relationship between an attorney and his client in which it is appropriate to imply the authority to accept service of process. *See generally Rubin*, 387 F.3d 1077 (finding counsel was impliedly authorized to accept service where he had earlier represented client in a closely related adversarial

3

proceeding).

The Court is also not convinced that the service DNP rendered to Defendant's address in Irvine, California was deficient. The Federal Rules of Civil Procedure allow for service of a Complaint to a party's residence "by leaving copies [of the summons and of the complaint] at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein . . . ." Fed. R. Civ. P. 4(e)(2). DNP rendered such substitute service on Defendant's residence in Irvine, the address of which was determined through Defendant's discovery responses the Underlying Case, fewer than 6 months after Defendant himself confirmed this address in his March 22, 2006 deposition. *See* Taillieu Decl. Ex. B ("Proof of Service") (demonstrating substitute service at Defendant's Irvine address on August 24, 2006); *id.* Ex. D (form interrogatory responses in which Defendant stated his address was 207 Las Palmas Drive; Irvine, California 92602); *id.* Ex. E (testimony of Defendant's March 22, 2006 deposition confirming the address given in his prior form interrogatory responses).

Defendant now claims that this substitute service was inadequate because he was living in British Columbia, Canada at the time. Hang Decl. ¶ 3. To this effect, Defendant provides a variety of utility bills demonstrating that he lived in British Columbia at the relevant time. *See id.* Exs. A-C. The Court takes no issue with this fact. At the same time, it is well established that a person may have more than one dwelling house or usual place of abode for the purposes of Rule 4(e)(2). *See, e.g., Stars' Desert Inn Hotel & Country Club v. Hwang*, 105 F.3d 521, 524 (9th Cir. 1997) (citing *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir.)). The fact that Defendant was living in British Columbia at the time DNP performed substitute service on his residence in Irvine therefore does not necessarily render that service invalid.

Defendant apparently recognizes this important distinction in his reply papers, noting that "[Defendant] no longer lived at the address at which he was purportedly sub-served, as is clearly stated in his Declaration accompanying this motion." Reply 2:20-22. But Defendant's Declaration states no such thing, remarking only that "I was, at the time I was purportedly served, at my residence living in British Columbia, Canada." Hang Decl. ¶ 3. This falls far short of an unequivocal statement that Defendant did not also live or share dwelling at his Irvine

4

residence. Also conspicuously absent from the record is any other evidence indicating that Defendant no longer made residence in Irvine, such as a bill of sale, proof of deed transfer, or testimony a current occupant at the Irvine residence.

Without any evidence demonstrating that Defendant ceased residing at his Irvine residence at the time DNP performed substitute service, the Court simply cannot declare that this service was invalid. This is especially true given that federal courts liberally construe statutes authorizing service where, as here, the party to be served does not dispute that actual notice has occurred. *See, e.g., Karlsson v. Rabinowitz*, 318 F.2d 666, 668-69 (4th Cir. 1963) (finding service valid where copy of summons and complaint left at defendant's Maryland house in which he had lived prior to moving ahead of his family to Arizona); *Blackhawk Heating & Plumbing Co., Inc. v. Turner*, 50 F.R.D. 144 (D. Ariz. 1970) (finding service valid where summons left with defendant's daughter in dwelling where defendant had lived until shortly before service was made).

### B. Defendant Has Not Shown Good Cause to Set Aside Entry of Default

Even if the Court agreed that the service DNP rendered was technically deficient Defendant would not be entitled to relief from default because his culpable conduct led to its entry. "A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer." *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987); *see also TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) ("[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer.") (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988)); *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 690 (9th Cir. 1988); *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 815 (9th Cir. 1985). Critically, while he contests the technical sufficiency of the service DNP rendered, Defendant never disputes that the August 24, 2006 service on his attorney properly reached and informed him of DNP's Complaint.

Defendant's experience in the Underlying Case also supports finding him culpable for the entry of default. "Absent some explanation . . . , it is fair to expect that individuals who have

previously been involved in litigation or have consulted with a lawyer appreciate the consequences of failing to answer and do so only if they see some advantage to themselves." *Knoebber*, 244 F.3d at 699 n.6; *see also Direct Mail*, 840 F.2d at 690; *Meadows*, 817 F.2d at 522. Not only had Defendant consulted with lawyers and likely developed familiarity with legal procedures during the Underlying Case, that exposure in particular mitigates in favor of finding Defendant culpable for the default because it involved the very same parties and occurred contemporaneous with the filing of DNP's Complaint.

All of these facts direct the Court to its conclusion that Defendant's culpable conduct led to the entry of default. Accordingly, Defendant has failed to show good cause and the Court declines to set aside the entry of default against him.

## IV. DISPOSITION

For the reasons set forth above, Defendant's Motion is DENIED.

IT IS SO ORDERED.

DATED: April 23, 2007

*[signature]*
DAVID O. CARTER
United States District Judge